UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
FREDERICK FRANKLIN,

               Petitioner,      :    REPORT & RECOMMENDATION

      -against-         :    12 Civ. 4354 (LTS)(MHD)

DARWIN LACLAIR, Superintendent,   :

              Respondent.    :
---------------------------------x

TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

    Pro se petitioner Frederick Franklin seeks a writ of habeas corpus to challenge his 1986 judgment of conviction in the New York State Supreme Court, New York County, on charges of second-degree murder, second-degree attempted murder and first-degree assault. The trial court sentenced Franklin to concurrent terms of 25 years to life, 12 1/2 to 25 years, and 7 1/2 to 15 years, respectively, on these three convictions. Franklin is currently serving his sentence.

    Petitioner asserts five grounds for relief. First, he contends that the prosecutor violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing the minutes of a plea entered by the State's principal witness in March 1982. Second, he argues that the prosecutor engaged in misconduct by not correcting false

testimony of the same witness as to the details of his prior agreed-upon plea and sentence. Third, he complains that the prosecutor bolstered false testimony by that witness when stating in summation that there was no evidence that the witness had received a quid pro quo for his testimony. Fourth, he urges that he was denied the effective assistance of appellate counsel, who did not argue prosecutorial misconduct on his direct appeal. Finally, he asserts that he was denied effective appellate counsel because his lawyer did not argue ineffective assistance of trial counsel based on the trial lawyer's failure to use five police reports turned over to him by the State.

Respondent has moved to dismiss the petition as untimely under 28 U.S.C. § 2244(d). Petitioner opposes. For the reasons that follow, we recommend that the motion to dismiss be granted.

The Pertinent Facts

The charges against petitioner stemmed from the January 12, 1979 shooting of two men, one a gypsy cab driver, resulting in the death of the driver, John Burwell. The second victim, Robert Robinson, survived. A New York County grand jury returned a three-count indictment the same month, charging second-degree murder,

2

second-degree attempted murder and first-degree assault and naming
Timothy Kirby as the sole defendant. Kirby went to trial in March
1980, but the trial ended in a mistrial because of a jury deadlock.
See People v. Kirby, 112 Misc.2d 906, 906-07, 447 N.Y.S.2d 606, 607
(Sup. Ct. N.Y. Cty. 1982), rev'd, 92 A.D.2d 848, 460 N.Y.S.2d 572
(1st Dep't 1983).

Petitioner Frederick Franklin was arrested in July 1980 on an
unrelated charge, and on October 31, 1980 a grand jury returned a
superceding indictment naming him as well as Kirby on the three
charges relating to the shooting of Burwell and Robinson. Kirby and
Franklin went to trial together on February 21, 1981, but that
trial also resulted in a mistrial, on March 29, 1981, when the jury
was unable to reach a unanimous verdict. The defendants were
retried starting in October 1981, but the same result followed,
with the jury unable to agree, leading to the declaration of a
mistrial on November 13, 1981. See People v. Kirby, 92 A.D.2d 848,
849, 460 N.Y.S.2d 572, 573 (1st Dep't 1983) (recounting trial
history).

Following this series of deadlocks, the trial court granted a
motion to dismiss the indictment, invoking the inherent authority
of the court to dismiss based on the seeming futility of trying to

3

obtain a unanimous verdict. <u>Kirby</u>, 112 Misc.2d at 910-13, 447 N.Y.S.2d at 609-10. On appeal, however, the Appellate Division reversed and sent the case back to the trial court for another retrial. <u>Kirby</u>, 92 A.D.2d at 849-50, 460 N.Y.S.2d at 573-74. Franklin appealed this decision to the New York Court of Appeals, which dismissed the appeal as not within its appellate jurisdiction since the challenged decision was not based solely on the law or on the law and "such facts which, but for the determination of law, would not have led to reversal." <u>People v. Franklin</u>, 63 N.Y.2d 1033, 1034, 484 N.Y.S.2d 814, 814 (1984)(citing N.Y. Crim. Proc. L. § 450.90(2)(a)).

Franklin's third trial (and Kirby's fourth) began on February 4, 1986. As characterized by both sides, the State's case relied significantly on the testimony of the surviving victim, Robert Robinson. At trial he admitted that in 1977 he had shot and killed an individual named Dondi Houze, described as a friend of the defendants, and that Kirby had sworn to avenge that attack. (Pet., dated May 25, 2012 (Dkt. No. 1) ("Pet.") Att. at p. 1). Robinson identified both defendants as the shooters. (<u>Id.</u>). This trial finally yielded a unanimous set of verdicts on February 20, 1986, as the jury convicted both men on all three counts. (Decl. of Allen J. Vickey, Esq., dated Dec. 21, 2012 (Dkt. No.) ("Vickey Decl.") at

4

¶ 5). On March 13, 1986, the trial court (Altman, S.C.J.) sentenced Franklin as indicated above. (Id.).

Franklin, represented by appointed counsel, appealed from his conviction to the First Department. On that appeal he argued that the conviction had been against the weight of the evidence in light of the lack of credibility of Robinson, that the trial court had erred in permitting evidence of Franklin's friendship with Kirby, that the prosecution had overemphasized evidence of Franklin's flight from the police, and that the trial judge had improperly allowed evidence of a statement made by Kirby. (Id. at ¶ 6). On June 2, 1988, the Appellate Division affirmed the conviction without opinion. People v. Franklin, 141 A.D.2d 1009, 530 N.Y.S.2d 424 (1st Dep't 1988). In the wake of that decision, petitioner sought leave to appeal to the New York Court of Appeals, which denied that request on September 6, 1988. People v. Franklin, 72 N.Y.2d 956, 534 N.Y.S.2d 670 (1988).

Petitioner did not seek a writ of certiorari. His next step in challenging his conviction did not take place until November 1992, when he filed a motion in the Appellate Division for a writ of error coram nobis premised on the claim that he had been denied the effective representation of counsel on his earlier appeal from his

5

conviction. In support of that claim, he contended that counsel had failed to pursue an argument for prosecutorial misconduct -- specifically, that the prosecutor had presented perjured testimony by Robinson about his own 1982 plea deal in connection with a host of pending charges, and that the prosecutor had then not only failed to correct the falsehood, but had later emphasized it in summation. (Vickey Decl. ¶ 8; Coram Nobis Mot., dated Nov. 16, 1992 ("Coram Nobis") (annexed to Franklin letter to the Court dated Feb. 11, 2013) at 5, 11-14, 18-33). In pursuing this Sixth Amendment claim, Franklin contended that Robinson, who had concededly been allowed to plead to a variety of serious charges in 1982 for which he received a six-year-to-life sentence, had falsely stated at petitioner's trial that his testimony against Franklin had not been a quid pro quo for that plea deal. (Vickey Decl. ¶ 8; Coram Nobis 17-20). Franklin further argued that this false testimony was then highlighted by the prosecutor in summation. That said, Franklin also noted that the prosecutor in summation had acknowledged that "some form of promise had been made to Robinson, and that prior trial records reflect that a deal [was] in fact made with Robinson for his testimony." (Coram Nobis 12) (brackets in original). Nonetheless, he complained that the agreement itself had not been put into evidence for the jury's consideration. (Id.).

On February 2, 1993 the Appellate Division denied Franklin's coram nobis motion without opinion. People v. Franklin, 190 A.D.2d 1101, 593 N.Y.S.2d 1009 (1st Dep't 1993). Petitioner then moved for reargument, which the court denied on April 15, 1993. People v. Franklin 192 A.D.2d 1142, 598 N.Y.S.2d 894 (1993).

Franklin's next step in direct connection with his criminal conviction did not take place until seventeen years later, in 2010, when he moved pursuant to Crim. Proc. L. 440.10 to vacate his conviction. (Vickey Decl. ¶ 10; Pet.'s 440.10 Motion (annexed to Vickey letter to the Court dated Jan. 30, 2013)). In the extended interim, and even before the 1993 denial of his coram nobis motion, Franklin engaged in a very lengthy process of seeking documents from the police, the prosecutors and even the New York Supreme Court court reporters, principally by requests under the N.Y. Freedom of Information Law ("FOIL"). The parties seem to differ somewhat in their account of these steps, with Franklin offering more detail, although not more documentation,[1] but for purposes of our analysis of the current motion, we will adopt petitioner's

---

[1] Neither side has offered much in the way of documentation of the FOIL demands and ensuing civil litigation. Respondent explains the gaps in its proffer as attributable to "the advanced age of the case". (Vickey Decl. ¶ 9 n.2). This explanation is entirely plausible.

7

version of these events.

According to Franklin, he filed several FOIL requests in March 1989, seeking "information 'material' to [his] case, namely, the particulars of his arrest and the 'trial transcripts' of his present and prior trials". (Franklin Timeliness Aff., dated Aug. 23, 2012 ("Timeliness Aff.") att. 1 at 1st pg.). Some of his requests (relating to his arrest) were denied, and therefore on June 5, 1989 he filed an Article 78 petition in state court to compel production of "copies of certain documents relating to petitioner's 1980 arrest and subsequent conviction for murder." (Id.). By order dated August 8, 1990, the court directed the Police Department to respond further to the FOIL request, and on December 18, 1990 it provided eleven documents to petitioner. (Id. att. 2 at 1st pg.).

On February 25, 1991 Franklin submitted another FOIL request, seeking inter alia any motions and other documents filed in his criminal case. In response, on June 11, 1991 he received five police reports, which he characterizes as showing that Robinson had not identified him as one of the shooters. (Id.).[2] On January 13,

---

[2] This is a somewhat misleading description of the document, which reflects that, when first interviewed, apparently shortly

1992 Franklin delivered the five reports to his prior appellate counsel, who then reported to Franklin that he had not seen these documents when he was handling the appeal. (Id. att. 2 at 1st-2d pgs.; Dismissal Opp'n at Ex. A).[3]

In the wake of the former appellate counsel's report to Franklin, petitioner filed three more FOIL requests, on July 27, July 28 and August 24, 1992, respectively. These asked for police reports of any interviews with Robinson while he was in hospital on the day of the shooting. (Timeliness Aff. att. 2 at 2d pg.).

Between October 22, 1993 and June 15, 1994, petitioner submitted five additional FOIL requests -- to the Police Department, the District Attorney's Office and the Parole Board. They sought (1) any letters from the District Attorney summarizing any agreement with Robinson in exchange for his trial testimony,

---

after the shooting, Robinson reported that he had recognized both shooters, that one was Kirby and that he would recall the name of the second man. The report also notes that in a follow-up interview the next day, Robinson named Franklin as the second assailant. (See Pet.'s Opp'n to Dismissal, dated Jan. 18, 2013 ("Dismissal Opp'n") Ex. B at 6th-7th pgs & 9th-10th pgs.).

[3] In petitioner's timeliness affirmation he does not mention what he alleges in his petition -- that when he received the five police reports under the FOIL, he quizzed his trial attorney, who confirmed that he had received copies of those reports from the State before trial. (Pet. at 9 & Ex. E).

(2) any letters  to the Parole Board seeking Robinson's early release, and (3) any police reports referring to Robinson having identified the shooters. (Id. att. 2 at 3d pg.). The District Attorney's Office denied Franklin's request on July 27, 1994, and the FOIL appeal officer upheld that denial on September 16, 1994. (Id.).

On February 10, 1995 petitioner filed his second Article 78 petition, seeking relief from this denial. The court ultimately denied his application, ruling on January 9, 1996 that the District Attorney had demonstrated that the requested documents had been previously furnished to Franklin's counsel as Rosario material prior to the criminal trial. (Id. att. 2 at 3d-4th pgs.). Franklin appealed that decision, but the Appellate Division, First Department, affirmed it on October 8, 1998, stating that "[defendant] is not, absent a showing that such documents are no longer available to him, entitled to material that was previously provided to his attorney(s)." Franklin v. Keller, 254 A.D.2d 83, 678 N.Y.S.2d 330 (1st Dep't 1998). (See also Timeliness Aff. att. 2 at 8th pg.).

In the interim, starting on March 4, 1996, an attorney for Franklin wrote to the District Attorney's Office seeking release

10

under FOIL of any <u>Rosario</u> material disclosed at trial and any communications about Robinson's cooperation. (<u>Id.</u> att. 2 at 4th pg.). In response, on September 19, 1996 the attorney received copies of (1) two letters -- one from a Police Detective and the other from the prosecutor -- to Parole Officer Henry Conforti and (2) a letter dated January 6, 1981 from the prosecutor, stating that "[n]o promise or consideration has been given to Mr. Robinson for testimony." (<u>Id.</u> att. 2 at 5th pg.).

On October 2, 1996 petitioner made still another FOIL request, to the District Attorney's Office, asking for production of "information" concerning its "understanding" with Robinson.  On October 28, 1996, the District Attorney's Office responded that it had no responsive documents other than what had previously been produced to him. (<u>Id.</u> att. 2 at 6th pg.). In the same period petitioner also pursued, by FOIL request, the minutes of Robinson's plea and sentencing from March 31, 1982. As a result of continuing correspondence with the court reporters from January to March 1997, he was advised that the reporters had obtained the sentencing minutes from the District Attorney's Office, but had not located the plea minutes. (<u>Id.</u>).

11

Failing to obtain satisfaction from the court reporters, Franklin filed a motion in the State Supreme Court on April 3, 1997 seeking issuance of a subpoena _duces_ _tecum_ to obtain the plea minutes. (_Id._ att. 2 at 7th pg.). The Supreme Court denied the motion on May 12, 1997, and denied his reargument motion on March 25, 1998. (_Id._ att. 2 at 7th-8th pgs.). Petitioner appealed that denial, but his appeal was dismissed on April 4, 2000. (_Id._ att. 2 at 8th pg.).

On November 10, 1998, one month after the Appellate Division had affirmed the Supreme Court's 1996 dismissal of his Article 78 petition to compel production under the FOIL, see _Franklin_, 254 A.D.2d at 83, 678 N.Y.S.2d at 330, Franklin sought leave to "renew" his appellate challenge to the Supreme Court's decision based on "newly discovered evidence". (Timeliness Aff. att. 2 at 8th pg.). On February 18, 1999 the Appellate Division denied this application but stated that it was without prejudice to Franklin renewing his Article 78 proceeding in the Supreme Court. (_Id._ att. 2 at 9th pg.).

On May 6, 1999, petitioner filed a motion in the Supreme Court to renew his Article 78 application. (_Id._). After the entry of a default against respondent and then the vacatur of that default,

12

the Supreme Court granted Article 78 relief to petitioner on June 27, 2000, since he had demonstrated that the documents that he sought, even if previously produced in his criminal case, were no longer available to him. (Id. att. 2 at 9th-10th pgs.). As a result, on October 5, 2000 petitioner received a copy of a police report that included Robinson's statement to the police shortly after his shooting in which he identified Kirby as one of the shooters, reported that he had recognized the second shooter, and said "I know this dude. I'll get his name for you." (Id. att. 2 at 10th pg.). According to petitioner, this statement contradicted police testimony at his trial that Robinson had identified Franklin at the outset, leading to his arrest. (Id. att. 2 at 10th-11th pgs.).

Petitioner reports that he assumed that his trial attorney had not had a copy of this statement at the time of trial, and he sought confirmation from that attorney by letters on October 18, 200 and January 2, 2001, but the lawyer did not respond to him. (Id. att. 2 at 11th pg.).[4] Franklin also asked his former lawyer

---

[4] It bears mention that nearly a decade earlier, Franklin's trial attorney had confirmed to Franklin that he had received before trial copies of the five police reports, which had apparently included the statement by Robinson about which petitioner was quizzing counsel again in 2001. (See Pet. Ex. E).

13

for a copy of the minutes of Robinson's plea but got no response.
(<u>Id.</u>).

On April 20, 2001, an attorney acting on petitioner's behalf
made still another FOIL request for a copy of Robinson's March 1982
plea transcript. On April 26, 2001 the Records Access Officer for
the District Attorney's Office denied the request, apparently on
the basis that the document was judicial in nature and thus not
subject to FOIL. (<u>Id.</u> att. 2 at 12th pg.; Pet.'s 440.10 Mot., dated
June 2, 2010 (annexed to Vickey letter to the Court dated Jan. 31,
2013) ("440.10 Mot.") at Ex. 7). Counsel did not appeal that
denial. Instead, on August 12, 2001 petitioner himself filed a new
FOIL request for the same minutes, with the same result that the
District Attorney's Office denied the request; when Franklin
administratively appealed, the FOIL Appeal Officer upheld the
denial. (<u>Id.</u>).

Petitioner waited more than a year and then made the same
request of the prosecutor, citing the intervening decision of the
New York Court of Appeals in <u>Newsday v. Empire State Dev. Corp.</u>, 98
N.Y.2d 359, 746 N.Y.S.2d 855 (2002). The District Attorney's Office
again denied the request, on September 10, 2002, and then affirmed
that denial on administrative appeal on October 23, 2002.

14

(Timeliness Aff. att. 2 at 12th-13th pgs.).

Franklin filed his third Article 78 proceeding on February 11, 2003, challenging these denials by the District Attorney's Office. On March 3, 2004 the Supreme Court denied that application. (Id. att. 2 at 13th pg.). Petitioner then appealed that denial, and the First Department reversed on August 11, 2005, ordering the District Attorney to turn over the Robinson plea minutes. Franklin v. Miner, 21 App. Div.3d 276, 799 N.Y.S.2d 417 (1st Dep't 2005). The District Attorney sought leave to appeal to the New York Court of Appeals, an application that was denied first by the Appellate Division on December 8, 2005, Franklin v. Miner, 2005 N.Y. App. Div. LEXIS 14246 (1st Dep't Dec. 5, 2005), and then by the Court of Appeals on June 8, 2006. Franklin v. Miner, 7 N.Y.3d 735, 818 N.Y.S.2d 187 (2006).

In the wake of these orders, petitioner and the District Attorney's Office engaged in an extended correspondence about the Robinson plea minutes, from June 15 to December 26, 2006. In brief, petitioner demanded that the March 1982 Robinson plea minutes be provided, the District Attorney's Office sent him the wrong plea minutes (reflecting a plea that Robinson had entered in 1980), Franklin advised the District Attorney's Office that it has sent

15

the wrong minutes, the Office then sent him plea minutes of Robinson from 1982 but apparently they were also the wrong minutes since they reflected a plea allocution by Robinson in June 1982 to a different set of charges and not the March 1982 plea proceeding that petitioner had been seeking, and the District Attorney's Office then advised that it had provided all of the plea minutes that it had in its files for the various Robinson cases and could do no more. (Timeliness Aff. att. 2 at 14th-17th pgs; 440.10 Mot. Exs. 9-13.).

On December 28, 2006 Franklin filed a motion in the State Supreme Court, seeking to have the District Attorney's Office held in contempt for failing to produce the March 1982 plea transcript. (Timeliness Aff. att. 2 at 17th pg.). On February 27, 2007 the Supreme Court denied his motion, premised on its finding that the District Attorney had supplied all of the plea transcripts that it had in its possession associated with the various indictments of Robinson. (Id. att. 2 at 17th-18th pgs.; 440.10 Mot. Ex. 14 at 5-7). Petitioner sought reargument, a motion that the court denied on July 20, 2007. (Id. att. 2 at 18th pg.). Franklin filed a notice of appeal on June 1, 2007, and on December 18, 2008 the Appellate Division affirmed the denial of his contempt motion. Franklin v. Schwartz, 57 A.D.3d 338, 870 N.Y.S.2d 248 (1st Dep't 2008). In

16

doing so, it stated that "[n]o reason appears to doubt respondent's assertion that despite an extensive search of the District Attorney's case files relating to the three indictment numbers specified in petitioner's requests, she was unable to locate the requested minutes of a 1982 plea taken by a certain witness at petitioner's trial." Id. at 338, 870 N.Y.S.2d at 248. Petitioner sought leave to appeal to the Court of Appeals, which denied that application on June 9, 2009. In re Schwartz, 12 N.Y.3d 880, 883 N.Y.S.2d 174 (2009).

Nearly one year later, on June 2, 2010, petitioner filed a motion to vacate under N.Y. Crim. Proc. L. § 440.10. In that motion he argued that Robinson had lied under oath when he denied at trial that he had received a so-called "package deal" from the District Attorney that was premised on his cooperative testimony at Franklin's trial, that the prosecutor had violated his rights under Brady by not turning over to the defense the minutes of Robinson's March 31, 1982 plea and that the prosecutor had improperly bolstered Robinson's false testimony by telling the jury that there was no evidence that Robinson had received any benefit in exchange for his testimony. (Vickey Decl. ¶ 10; 440.10 Mot.; Timeliness Aff. att. 2 at 20th pg.).

17

On December 3, 2010 the Hon. Roger S. Hayes denied petitioner's 440.10 motion. In doing so he held that all three claims were procedurally barred from review under section 440.10 because Franklin could have raised them on his direct appeal. (440.10 Decision, dated Dec. 3, 2010 at 3 (annexed to Jan. 31, 2013 Vickey letter)). Alternatively, he held that the claims were meritless. In so ruling the court observed that neither side had asked Robinson at trial about a possible deal for his testimony, and that indeed defense counsel had stated on the record that he had chosen not to pursue that question for tactical reasons, although he was aware of an agreement between Robinson and the prosecutor. Hence, Justice Hayes found, Robinson had not committed perjury and the prosecutor had not violated any duty to correct perjured testimony. (Id. at 4-5). As for the Brady claim, the judge noted that defense counsel had acknowledged at trial being aware of the terms of Robinson's plea deal based on transcripts of the first two trials of Franklin, and had chosen not to pursue the matter because it would bolster Robinson's credibility based on his prior consistent statements. Since counsel knew the details of the agreement, the court found no Brady violation. (Id. at 5-7). Finally, the court observed that the prosecutor had not improperly bolstered Robinson's testimony by stating to the jury that there was no evidence of a quid pro quo for Robinson's testimony; the

18

prosecutor's statement was true because Robinson had not been asked about the terms of the plea deal and hence had not testified on that topic. (<u>Id.</u> at 7-8).

Franklin sought leave to appeal from this ruling. The Appellate Division denied his application on June 6, 2011 and entered that order on June 11, 2011. (Timeliness Aff. att. 2 at 20th pg.). Petitioner next sought leave to appeal to the Court of Appeals, which denied his application on September 19, 2011, noting that "the order sought to be appealed from is not appealable under CPL 450.90." (Vickey Decl. ¶ 12).

Having been rebuffed by the state courts, Franklin finally turned to this court, filing a habeas petition that is dated May 25, 2012.

<u>ANALYSIS</u>

Respondent has moved to dismiss the petition as untimely under 28 U.S.C. § 2244(d). That argument is plainly correct.

The pertinent statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute also contains a tolling provision, which specifies that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

These provisions were enacted as part of the Anti-Terrorism
and Effective Death Penalty Act ("AEDPA") and were effective as of
April 24, 1996. See, e.g., Mayle v. Felix, 545 U.S. 644, 654
(2005). Insofar as section 2244(d) applies to convictions that had
been finalized before that date, the statute has been interpreted
as permitting a one-year grace period for the affected defendants
to file their habeas petitions, thus effectively setting a deadline
for them of April 24, 1997. See, e.g., Ross v. Artuz, 150 F.3d 97,
98 (2d Cir. 1998); accord, e.g., Adeline v. Stinson, 206 F.3d 249,
251 (2d Cir. 2000).

As noted, the last stage of Franklin's direct appeal was the
denial by the New York Court of Appeals of his application for
leave to appeal from the affirmance of his conviction, and that
order was issued on September 6, 1988, more than seven years before
the enactment of the AEDPA. Hence the presumptive deadline for
Franklin to have filed his habeas petition under section
2244(d)(1)(A) was April 24, 1997.[5] Plainly he missed that deadline

---

[5] We note that the Second Circuit has since held that the
commencement of the running of the one-year period should be
dated from 90 days after the final rejection of the petitioner's
claims by the New York Court of Appeals, since a defendant has 90
days from that point to petition the Supreme Court for a writ of
certiorari. See, e.g., Williams v. Artuz, 237 F.3d 147, 151 (2d
Cir. 2001), cert. denied, 534 U.S. 924 (2001). See also
Hizbullahankhamon v. Walker, 255 F.3d 65, 68 (2d Cir. 2001),

by more than fifteen years.[6]

In view of the plethora of applications that petitioner filed in state court apart from his direct appeal, it is necessary consider whether the tolling provision of section 2244(a)(2) can save his case. It plainly cannot.

Petitioner filed his first collateral challenge to his conviction, in the form of a coram nobis motion, in November 1992, and it was definitively and finally denied by the Appellate Division on April 15, 1993. Since that proceeding took place long before the enactment of the AEDPA, it does not toll any portion of the period post-dating April 24, 1996.

As noted, Franklin did not file another state court motion that challenged his conviction until June 2, 2010, when he moved to

---

cert. denied, 536 U.S. 925 (2002); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2002). For a defendant in the position of Franklin, however, there would be no justification for adding that 90 days to the grace period, since the grace interval long postdated his direct appeal, and thus his opportunity to seek United States Supreme Court review had ended years before.

[6] We deem the filing date of Franklin's habeas petition to be May 25, 2012 based on the prison mailbox rule. See Fed. R. App. P. 4(c)(1); see also, e.g., Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).

vacate his conviction under section 440.10. That filing took place more than thirteen years after the one-year grace period had expired, and hence the pendency of that motion cannot rescue petitioner's case.

At heart, it appears that Franklin is seeking a toll of the statutory deadline by relying on his filing, both administratively and in state court, of a series of applications for disclosure of documents by the District Attorney, the Police Department and ultimately the Supreme Court court reporters. This effort fails for several reasons.

First, and most notably, these proceedings simply do not fit within the bounds of the statutory tolling provision, which is predicated on "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim". 28 U.S.C. § 2244(d)(2). With the exception of the 1992 coram nobis motion, the various efforts undertaken by Franklin, beginning in 1989 and continuing in fits and starts until June 9, 2009, do not constitute applications for "review with respect to the pertinent judgment or claim." This specific point was made by the Second Circuit in Hodge v. Greiner, 269 F.3d 104 (2d Cir. 2001), in which the habeas petitioner had sought a toll

23

based in part on the pendency of an Article 78 proceeding in New York State Supreme Court. In that state court proceeding he had sought production of documents under FOIL in the wake of the partial denial of his administrative FOIL request for such materials. Id. at 105-06. The circuit court rejected the tolling argument, observing that "Hodge's Article 78 proceeding did not challenge his conviction. Rather, it sought material he claimed might be of help in developing such a challenge . . . ." Id. at 107. The Court noted, citing the trial judge, that "if a filing of that sort could toll the AEDPA limitations period, prisoners could substantially extend the time for filing federal habeas petitions by pursuing in state court a variety of applications that do not challenge the validity of their convictions." Id. (citing Sorce v. Artuz, 73 F. Supp.2d 292, 297-98 (E.D.N.Y. 1999)). As the Court explained, if a defendant believes he needs additional documentation to support a collateral challenge to his conviction, "his remedy is to seek such relief from the court where a properly filed and timely collateral attack on his conviction is pending." Id. at 107.[7]

---

[7] It bears mention that the federal rules governing habeas proceedings under section 2254 contain provisions that permit the habeas court to authorize such discovery by a timely petitioner when appropriate. See Rules Governing Section 2254 Cases R. 6.

24

The holding in Hodge has been recently reaffirmed by the Second Circuit, and remains controlling law. See Collins v. Ercole, 667 F.3d 247, 249-53 & n.6 (2d Cir. 2012) (distinguishing Wall v. Kholi, __ U.S. __, 131 S.Ct. 1278 (2011), and reaffirming Hodge). Moreover, although the Court in both Hodge and Collins observed that "[w]e need not decide whether, on facts differing from those in the pending matter, an Article 78 proceeding might be deemed the functional equivalent of an 'application for State post-conviction or other collateral review'", Hodge, 269 F.3d at 107; accord Collins, 667 F.3d at 251 n.6, this comment does not alter the result here. The FOIL-related efforts of Franklin match precisely the proceeding that Hodge sought to invoke as a basis for tolling, and the Hodge panel made abundantly clear that the search for documents under FOIL and Article 78 in preparation for a future collateral challenge to a conviction does not permit a toll.[8]

Under these circumstances, petitioner cannot use section 2244(a)(2) to toll the statutory deadline. His invocation of his Article 78 proceedings and equivalent efforts cannot survive Hodge and its progeny. It necessarily also follows that he cannot rely on

---

[8] The cited caveat in Hodge and Collins presumably refers to the possibility that a criminal defendant may seek to challenge his conviction or sentence in a motion mislabeled as an Article 78 petition.

his administrative applications to various agencies under FOIL.

Second, even if we ignored the problem that FOIL applications and requests for subpoenas to the court reporters are not collateral challenges to a conviction, Franklin's tolling efforts would fail. Starting from April 24, 1996 and ending with the filing of the current petition, there were gaps of time when no applications by Franklin were pending, and those periods collectively total substantially more than one year.[9] Since tolling only stops the running of the limitations clock, but does not reset it to zero, see, e.g., Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000), petitioner could not possibly establish a sufficient toll to keep his filing within the one-year deadline.

Alternatively, petitioner attempts to bring himself within one or more of the alternative start dates for the limitations period under sections 2244(a)(1)(B)-(D). None of these efforts bears any fruit.

---

[9] These gaps appear to include the periods from October 8 to November 10, 1998; from February 18, 1999 to May 6, 1999; from June 27, 2000 to April 20, 2001; from April 26, 2001 to August 12, 2001; from in or around September 2001 to September 3, 2002; from October 23, 2002 to February 11, 2003; from June 8, 2006 to December 28, 2006; from June 9, 2009 to June 2, 2010; and from September 19, 2011 to May 25, 2012.

Petitioner's papers explicitly rely on subsection 2244(a)(1)(B), which allows the limitations period to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; . . . ." (See Dismissal Opp'n 3-7).[10] His theory is that his FOIL efforts were directed to obtaining Brady material, and until he obtained it he faced an impediment to filing for habeas relief that justifies stopping the limitations clock. (See id. (citing United States v. Smith, 2000 WL 1268254, at *1 (E.D. Pa. Aug. 28, 2000); Edmond v. United States Attorney, 959 F. Supp. 1, 4 (D.D.C. 1997)). This theory is unsustainable.

The record does not reflect any "impediment" resulting from unconstitutional or otherwise unlawful "State action" that

_____

[10] Franklin does not pursue any argument based on subsection 2244(a)(1)(c), which authorizes a later start date when "the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." This omission is not surprising. The claims now asserted by petitioner were well recognized throughout the relevant period, and he points to no Supreme Court decision within one year of his 2012 habeas filing -- or indeed at any other time -- that newly recognized any of the constitutional rights he invokes, much less made the right retroactively enforceable on collateral review.

prevented Franklin from timely filing his habeas petition. Indeed, he was free to pursue all of his claims in the state courts either through his direct appeal or through a collateral challenge filed promptly after the completion of the appeal (or even before it), and once he had done so he was free to file his habeas petition in this court. He chose for whatever reason not to do so, and instead to pursue nearly two decades of episodic FOIL requests and related applications, and he cannot avoid the consequences of his extraordinary delay in seeking habeas relief.

Petitioner also cannot plausibly argue that the State so successfully hid the pertinent facts -- notably as to Robinson's plea deal -- as to gull him into resting on his oars and that this represents an "impediment" referred to in subsection 2244(a)(1)9B). First, the facts were, as we have noted, apparently known to his trial counsel as of the time of trial. Indeed, the state courts so found (see 440.10 Decision 5-7), and we are presumptively bound by their factual findings. 28 U.S.C. § 2254(e)(1). See, e.g., Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012). Second, the question of what was in Robinson's plea deal was explicitly discussed at the trial, and hence Franklin was on notice of the potential issue and was free to pursue it through the state courts and here in the form of challenges to his conviction.  Third, the absence of any impediment

28

is underscored by the fact that petitioner cannot identify any recent event (or indeed any remote event) that "removed" the purported impediment to his filing a habeas petition. As we have noted, the record as to the terms of Robinson's plea deal has not changed from what was known as of the time of trial, and hence there is no trigger to move the start of the limitations clock from 1997 forward to 2011 or 2012.

Fourth, insofar as petitioner cites two district court decisions suggesting that applications for Brady material that are not collateral challenges to the conviction may postpone the deadline for a habeas filing, that theory does not help him, for several reasons. These decisions, insofar as they may be read to suggest that the mere filing of FOIL-type requests for arguable Brady material will delay the deadline for a habeas petition are substantially inconsistent with Hodge, since such a rule would achieve the very result that the circuit court rejected -- that is, that a defendant would be able to use Article 78 proceedings seeking assertedly withheld information as a means of postponing the limitations deadline.[11] As the Second Circuit observed, to

_____

[11] It is true that Hodge directly addressed section 2244(a)(2), and not section 2244(a)(1)(B), but to apply the latter provision in this circumstance would yield the very result that the Second Circuit has held may not be achieved by use of

preserve a <u>Brady</u> or equivalent claim, the defendant must file a timely collateral challenge and then seek discovery of the assertedly undisclosed evidence in that proceeding. <u>See</u> <u>Hodge</u>, 269 F.3d at 107.

In any event, the line of cases to which petitioner is pointing for an "impediment" delay of the limitations defense does not provide any basis for excusing his delay. As several of these courts have noted, "to take advantage of such an extension, it must be shown that the processing of the FOIA [or FOIL] request prejudicially affected the filing of defendant's petition." <u>Smith</u>, 2000 WL 1268254 at *2 (citing <u>Felix v. Artuz</u>, 2000 WL 278077, at *2-3 (S.D.N.Y. Mar. 14, 2000)). Moreover, he must "credibly claim[] that the government improperly withheld <u>Brady</u> material which the petitioner later sought by filing a FOIA [or FOIL] request." <u>Ruiz v. United States</u>, 221 F. Supp.2d 66, 76 (D. Mass 2002). For reasons noted, petitioner cannot make these showings. As discussed, "[p]etitioner has not established how his failure to receive th[e requested] transcript[] has impeded or prevented him from filing his habeas petition in a timely manner." <u>Felix</u>, 2000 WL 278077, at *2-3. Indeed, even without that transcript he was able to file his

_____

proceedings that are not collateral challenges to the conviction.

habeas petition and assert whatever claims he deemed appropriate given the record of the case. Furthermore, since his counsel acknowledged at trial that he knew about the terms of the Robinson plea deal, petitioner could not credibly demonstrate that the Robinson plea transcript was "material" within the meaning of Brady and its progeny. See, e.g., United States v. Bagley, 473 U.S. 667, 675-76 (1985).

In sum, Franklin's "impediment" argument cannot save his petition.

Finally, at various points in petitioner's papers he also alludes to "newly discovered evidence" or "new facts" (e.g., Dismissal Opp'n 5-6; Timeliness Aff. att. 2 at 8th pg.; Sept. 21, 2012 letter to the Court from Frederick Franklin). Read liberally, these reference may be understood to invoke subsection 2244(a)(1)(D), which authorizes filing within one year "from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This mode of argument would also fail.

Franklin seems to identify three facts that he purportedly did not know at the time of his trial and supposedly learned later in

31

the process. These include (1) the claimed fact that Robinson had
received a very favorable plea deal in exchange for his trial
testimony, a fact supposedly covered up at the trial and lied about
through the testimony of Robinson and the summation of the
prosecutor, (2) the fact that petitioner's appellate attorney had
not seen the police reports that contained the initial statement by
Robinson to the police, in which he did not mention Franklin by
name although he did refer by name to Kirby, and (3) the fact that
the court reporters no longer had the notes from Robinson's March
31, 1982 plea allocution, during which -- Franklin seems to imply
-- it was confirmed that Robinson had agreed to testify against
Franklin and Kirby in exchange for a favorable plea deal on some of
the outstanding charges against him.

These apparent arguments plainly miss the mark. As the state
courts found, the terms of Robinson's plea deal were not a secret
at the time of trial, and Robinson never denied (whether
perjuriously or not) that he had agreed to testify as a quid pro
quo for his March 31, 1982 plea, since he was never asked that
question. (See 440.10 Decision 5-7). Indeed, the very colloquy with
the court that petitioner himself quotes in his papers (Pet. Ex. B
at 809-20) makes that clear, as defense counsel represented to the
court that he was aware of the plea deal terms from transcripts of

32

his client's earlier trials and had tactically chosen not to ask Robinson about the plea agreement. Similarly, as the 440.10 court noted, the prosecutor's statement in summation that there was no evidence at trial that there had been such a quid pro quo was accurate, since Robinson had never been asked that question. (440.10 Decision 7-8).

In short, then, the terms of Robinson's agreement did not constitute a newly discovered factual predicate. Moreover, despite all of Franklin's efforts to unearth the transcript of the March 1982 plea allocution, he was never able to do so, and hence his available information on this topic did not expand in any meaningful way beyond what was available to his trial attorney at the time of his last trial. Hence he cannot cite the fact of the plea terms as a newly discovered factual predicate for his petition.

As for the fact that Franklin's appellate counsel, when preparing the appeal, did not know of the five police reports that had been delivered to his trial counsel before or during trial,[12]

_____

[12] As we read Franklin's habeas petition, we infer that the ignorance of appellate counsel on this point is intended to undergird the petitioner's fifth claim. (Pet. 9-12).

Franklin documents the fact that he learned of this oversight in early 1992; indeed, his papers in opposition to dismissal annex an affidavit from his former appellate counsel confirming the pertinent facts, and that affidavit is sworn to March 1, 1992. (See Dismissal Opp'n Ex. A). Since Franklin waited more than twenty years from this revelation to file his petition, he cannot have exercised "due diligence" in this respect, as required by subsection 2254(d)(1)(D).

The third piece of assertedly "newly discovered evidence" comes in the form of an August 14, 2012 letter to Franklin from the Court Reporters' Office of the State Supreme Court, in which he is informed definitively that the notes of Robinson's March 31, 1982 plea allocution could not be located and thus had evidently been lost. (See Sept. 21, 2012 Franklin letter to the Court (annexing court reporters' letter)). Although petitioner in his letter asks that this court hold his case in abeyance to allow him to exhaust his remedies on a new 440.10 motion based on this "newly discovered evidence" and does not directly seek to link it to section 2244(d)(1)(D), in an excess of caution we read that correspondence as potentially raising this issue, and note that petitioner's proffer plainly does not meet the statutory standard. Even if we assumed that Franklin's effort, decades after his conviction, to

34

obtain preparation of a transcript of Robinson's plea from the court reporter's notes can be deemed to show reasonable diligence, the fact that the notes have been lost does not constitute "facts supporting [any of] the claim or claims presented" in the petition that petitioner is pressing in this proceeding. Hence it cannot form the basis for avoiding the otherwise applicable one-year deadline for filing.[13]

## CONCLUSION

For the reasons stated, we recommend that respondent's motion to dismiss under section 2244(d) be granted and that Franklin's petition be dismissed with prejudice. We further recommend that a certificate of appealability be denied as petitioner raises no

---

[13] The foregoing discussion also suffices to demonstrate that petitioner could not be granted equitable tolling, assuming he sought it, which he does not. Equitable tolling may be invoked "'only in rare and exceptional circumstances'", and the petitioner must demonstrate both that those circumstances "prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (quoting Turner v. Johnson, 177 F.3d 390, 391-92 (5th Cir. 1999) & citing Johnson v. Nyack Hosp., 86 F.2d 8, 12 (2d Cir. 1996)). Accord, e.g., Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004). For reasons noted, petitioner shows neither exceptional circumstances nor any basis for inferring that they prevented him from timely filing, and he equally fails to demonstrate reasonable diligence through the more than two decades of delay.

issue worthy of appellate review.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Laura Taylor Swain, Room 755, 500 Pearl Street, New York, New York 10007-1312 and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); Small v. Sec'y of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: New York, New York
       September 5, 2013

                         RESPECTFULLY SUBMITTED,


                         _____
                         MICHAEL H. DOLINGER
                         UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Report and Recommendation have been
mailed today to:

Mr. Frederick Franklin
# 85-A-156
Franklin Correctional Facility
62 Bare Hill Road
P.O. Box 10
Malone, New York 12953

Allen J. Vickey, Esq.
Assistant District Attorney
   for the County of New York
One Hogan Place
New York, New York 10013

37